## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **ELEANOR McGINN** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil Case No. SAG-23-02609** |
| **v.** | * | |
| | * | |
| **BROADMEAD, INC.** | * | |
| | * | |
| **Defendant.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

### <u>MEMORANDUM OPINION</u>

Plaintiff Eleanor McGinn brings this action against Defendant Broadmead, Inc. ("Broadmead"), alleging violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*; Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 794; and the Fair Housing Act ("FHA"), 42 U.S.C. § 3604, *et seq.*, along with state law claims for breach of contract, negligence, negligent misrepresentation, breach of express warranty, breach of implied warranty of merchantability, and breach of implied warranty of fitness for a particular purpose. ECF 1.

This opinion addresses three motions pending before this Court. Plaintiff filed a motion for partial summary judgment, ECF 38. Broadmead opposed Plaintiff's motion and filed a cross-motion for summary judgment. ECF 39, ECF 39-1. Plaintiff submitted her opposition and reply, ECF 44, and Broadmead filed a reply in support of its motion for summary judgment, ECF 47. This Court has reviewed the filings and held a hearing on November 12, 2024 on the summary judgment motions. Plaintiff also filed a motion to enforce payment of expert fees, ECF 48, on October 9, 2024, which Broadmead opposed, ECF 52. No hearing is necessary as to that motion. *See* Loc. R. 105.6 (D. Md. 2023).

For the reasons explained below, Plaintiff's Partial Motion for Summary Judgment, ECF 38, will be **DENIED**, Broadmead's Motion for Summary Judgment, ECF 39, will be **GRANTED,** and Plaintiff's Motion to Enforce Payment of Expert Fees, ECF 48, will be **DENIED**.

## I.     BACKGROUND[1]

The facts contained in this section are largely undisputed. To the extent there are disputed facts, they will be viewed in the light most favorable to the non-moving party.

Plaintiff is an 83-year-old resident at Broadmead, a retirement community in Hunt Valley, Maryland, where she has lived from about October 23, 2017, to the present. ECF 38 at 1; ECF 39-1 at 2, 5-6. Before joining the community, Plaintiff received written material from Broadmead regarding its "emphasis" on "Special Diets," including "Gluten Free" and "Celiac." ECF 38 at 7; ECF 38-2 at 4. Plaintiff asserts that she has Celiac disease and chose to reside at Broadmead because she felt that it would accommodate her gluten-free diet, which was her priority in selecting a retirement community. ECF 38 at 6-7.

In October 2016, Plaintiff executed the Residence and Care Agreement ("R&C Agreement"), ECF 38-2 at 67-167, and paid an entrance fee of $327,371 to join Broadmead. ECF 38 at 7; ECF 1 at 6. Plaintiff pays over $6,500 per month, and Broadmead "furnish[es]…facilities, services and medical care" as described in the R&C Agreement. ECF 1 at 6; ECF 38-1 at 71. The monthly fee includes three meals per day, but residents may adjust this to one or two meals per day and receive a credit for unused meals. ECF 38-1 at 75, 125, 129; ECF 38-2 at 13. Plaintiff was on a Quarterly Meal Plan, which provided her with an "allowance of $990 per quarter, representing

---

[1] For all pincites, this Court uses the ECF page numbers in the header at the top of the page rather than the page numbers in the footer at the bottom of the page or the page numbering in deposition transcripts.

one meal per day for three months." ECF 38-2 at 13. "Any balance remaining at the end of the quarter" would be forfeited. *Id*.

Plaintiff claims that she experienced multiple exposures to gluten from consuming food at Broadmead and, as a result, became sickened. ECF 1 at 2. There are three incidents that form the basis of Plaintiff's claims in this lawsuit. First, in February 2018, Plaintiff ate a crabcake at a special event at Broadmead. ECF 1 at 8; ECF 38-2 at 118-19. The crabcake was presented to Plaintiff as being gluten-free. ECF 1 at 8; ECF 38-2 at 118-19; ECF 44-1 at 152-53. After eating the crabcake, Plaintiff went home, became nauseous, and starting vomiting. ECF 1 at 8; ECF 44-1 at 153; ECF 39-3 at 151. Plaintiff informed Broadmead staff that she became ill and inquired whether the crabcake contained imitation crabmeat; Broadmead's administrative food service manager notified Plaintiff that real crab meat was used. ECF 39-3 at 151. Second, on June 20, 2020, Plaintiff ordered a stuffed tomato that was incorrectly labeled as gluten-free. ECF 39-3 at 115-16, 128; ECF 38-2 at 31. Plaintiff consumed the stuffed tomato the following day, after which she experienced severe bloating and stomach pain followed by nausea, "vomiting, diarrhea, exhaustion, and hives." ECF 38-2 at 12; *see also* ECF 39-3 at 116, 128. On June 24, 2020, she informed Broadmead's President and CEO Robin Somers about the stuffed tomato incident, adding "dining at Broadmead has become fraught with anxiety for me." ECF 38-2 at 12. Third, on January 29, 2021, Plaintiff ate chicken marsala that was labeled gluten-free. ECF 39-3 at 128. Afterward, Plaintiff experienced nausea, vomiting, diarrhea, chills, headache, weakness, exhaustion, fear, and anxiety. ECF 39-3 at 128; ECF 44-1 at 20. She also emailed Broadmead staff following this incident, stating, "There is no way that chicken was gluten free because I NEVER vomit unless I consume gluten." ECF 44-1 at 21.

After the January 2021 chicken marsala incident, Plaintiff decided to stop eating at Broadmead. ECF 38-2 at 119, 125-26; ECF 44-1 at 138-39; ECF 1 at 10. She also avoids restaurants and invitations to dinner at others' homes, instead preparing most of her own meals. ECF 1 at 15; ECF 39-3 at 132-34. Although she no longer eats at Broadmead, Plaintiff continues to use her meal plan to request gluten-free food from Broadmead, which she provides to others. ECF 39-3 at 182-92; ECF 44-1 at 26-27, 139.

Aside from the three alleged gluten exposures, Plaintiff finds the gluten-free food options at Broadmead limited and not comparable to dining options available to other residents. ECF 1 at 11. In January 2019, Plaintiff sent an email to Dan Hall, Broadmead's Director of Dining and Hospitality, outlining her "observations, concerns, and suggestions regarding gluten free food at Broadmead." ECF 39-3 at 161-65.

Plaintiff filed this lawsuit on September 26, 2023. ECF 1. On October 9, 2023, Plaintiff filed a motion for preliminary injunction, seeking "a reasonable range of safe, gluten-free options at Broadmead" and "preparation of said food options in a certified gluten-free kitchen" with adequately trained staff, or, in the alternative, "the return of Plaintiff's entrance fee and all money paid to Broadmead for services not rendered." ECF 7-1 at 1. The Court denied Plaintiff's motion for preliminary injunctive relief after holding a hearing on November 20, 2023. ECF 19. Following discovery, Plaintiff now moves for partial summary judgment on her three federal claims. ECF 38. Broadmead seeks summary judgment on all nine of Plaintiff's claims. ECF 39, 39-1.

## II.    LEGAL STANDARDS

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of

showing that there is no genuine dispute of material fact. *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993)). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Summary judgment is also warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348–49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

Where, as here, the parties have filed cross-motions for summary judgment, the court considers "each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Kantsevoy v. LumenR LLC*, No. ELH-17-359, 2019 WL 1441982, at *6 (D. Md. Apr. 1, 2019) (citations omitted). If the court finds that there is a genuine issue of material fact, both motions must be denied; but the court will render judgment if there is no genuine issue of material fact and "one or the other party is entitled to prevail as a matter of law." *Id.* (citation omitted).

### III.    ANALYSIS

Plaintiff's complaint consists of nine causes of action. ECF 1. Plaintiff moves for partial summary judgment on her ADA (Count I), Rehabilitation Act (Count II), and FHA claims (Count III). ECF 38 at 6. She contends: 1) she is entitled to damages under the Rehabilitation Act and the FHA because Broadmead denied her a "like experience" and failed to accommodate her disability; and 2) she is entitled to injunctive relief under the ADA because Broadmead continues to deprive her of a "like experience" and fails to accommodate her celiac disease. ECF 38 at 14, 24, 27. Broadmead moves for summary judgment on all nine of Plaintiff's claims, contending that 1) Plaintiff has presented no evidence from which a reasonable juror could conclude that it discriminated against Plaintiff because of her celiac disease, and 2) many of Plaintiff's claims are time-barred. ECF 39-1 at 3. The Court will analyze each cause of action in turn and assess each party's motion on its own merits.

### A.  Title III of the ADA (Claim I)

#### i.   Plaintiff has not established standing to seek injunctive relief under the ADA.

Plaintiff and Broadmead both seek summary judgment on Plaintiff's ADA claim. Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of disability in

the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Under Title III of the ADA, a person who faces discrimination on the basis of disability in places of public accommodation enjoys "a private right of action for injunctive relief but no right of action for monetary relief." *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, 638 (4th Cir. 2016); 42 U.S.C. § 12188(a)(1); 42 U.S.C. § 2000a-3(a). Therefore, any claim for damages under Title III of the ADA must be dismissed. *Thomas*, 841 F.3d at 638; *M.R. by and through N.R. v. Tajdar*, No. 17-cv-3836, 2018 WL 6050888, at *3 (D. Md. Nov. 19, 2018).

To establish standing for injunctive relief under the ADA, Plaintiff must show that, without an injunction, she will "suffer an injury in fact which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Proctor v. Prince George's Hosp. Center*, 32 F. Supp. 2d 830, 832 (D. Md. 1998). Injunctive relief cannot be granted without a "showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Thus, a plaintiff must show more than a past injury to assert a claim for injunctive relief under the ADA; there must be plausible allegations of "continuing, present adverse effects." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992).

Here, Plaintiff bases her request for injunctive relief largely on past injury rather than "a real and immediate threat of repeated injury." *Tajdar*, 2018 WL 6050888, at *3 (citations omitted). *See* ECF 1 at 18 (alleging Broadmead "discriminated" against Plaintiff because of her disability, "treated" Plaintiff differently, and "failed" to comply with Title III of the ADA). Past injury does not confer standing on Plaintiff to enjoin the possibility of future injuries. *See Thomas*, 841 F.3d

at 638 (complaint's focus on harm from memories of discrimination rather than any expressed intent to prevent future discrimination demonstrated lack of plausible future injury).

Plaintiff claims that "ongoing issues" demonstrate a "real and immediate threat" of future injury, including that Broadmead still lacks "safe, varied gluten-free options" and "each future exposure [to gluten] potentially poses a greater health risk [to Plaintiff] than the last." ECF 38 at 28-29. Even construing the facts in the light most favorable to Plaintiff, she has not shown that she is at risk of an actual or imminent injury; instead, her abstract and subjective fear of future harm is not sufficient to warrant injunctive relief. *See Lyons*, 461 U.S. at 107 n.8 ("emotional consequences of a prior act are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant"). Beyond her conjecture, Plaintiff has not shown that she risks gluten consumption if the specific measures she requests are not adopted. Broadmead has put forth evidence that it has implemented significant portions of the relief Plaintiff has requested, such as providing "a reasonable range of gluten-free options" and enrolling in a "gluten free certification program," ECF 39-1 at 16, ECF 39-3 at 193-212.[2] However, Plaintiff "is currently unwilling to consume any meals" at Broadmead because she does not trust Broadmead. ECF 1 at 12-13; *see also* ECF 44-1 at 138-39 (Plaintiff stopped eating at Broadmead in January 2021); ECF

---

[2] Even Plaintiff's expert, Dr. Alessio Fasano, testified that Broadmead "made the right remedies" and "made the right move" by enrolling in training on gluten-free food preparation for its employees such that he "feel[s] comfortable…that [Broadmead is] now in a different position and a place in accommodating [Plaintiff's] needs." ECF 44-1 at 43-44. Plaintiff's description of the injunctive relief she seeks has been a moving target as this case has evolved, and none of the measures taken, even those satisfying her own expert, have altered Plaintiff's refusal to personally partake in Broadmead's dining offerings.

38-1 at 119; ECF 39 at 8-9; ECF 44 at 10.[3] The record on summary judgment also shows that Broadmead has provided Plaintiff with additional options for gluten-free food and the option to make specific requests for the same. Plaintiff avails herself of those options but then chooses to give the food away to friends who are gluten-intolerant rather than consume it herself. ECF 39-3 at 182-92 (on March 3, 2024, ordering "2 orders of Gluten Free Macaroni and Cheese and GF biscuits for Tuesday, 1 order of GF Meat Lasagna and GF Garlic Bread for Wednesday, and 2 orders of Gluten Free Breaded Scallops for Saturday;" on February 24, 2024, requesting that the "Tex-Mex Tortilla Casserole," "Grilled Portobello Burger with Sweet Potato Fries," and "Spaghetti with Meatballs" be prepared gluten free); ECF 44-1 at 23, 26-27 (Broadmead confirming it could provide Plaintiff's requests), 109 (same), 138-39 (Plaintiff giving gluten-free meals away).

In sum, on the present record and with her refusal to eat at Broadmead despite many requested improvements being made, Plaintiff cannot show a concrete risk that she will suffer imminent injury absent injunctive relief. Because she cannot demonstrate standing to bring a claim under Title III of the ADA, Plaintiff is denied summary judgment as to her ADA claim, ECF 1, Count I. Broadmead's motion for summary judgment as to the ADA claim is granted. *Thomas*, 841 F.3d at 638 (dismissing plaintiff's Title III ADA claim for lack of standing).

### ii. Section 504 of the Rehabilitation Act (Claim II) and The Fair Housing Act (Claim III)

Plaintiff and Broadmead both seek summary judgment on Plaintiff's Rehabilitation Act and FHA claims. The Rehabilitation Act provides that no "otherwise qualified individual with a

---

[3] Indeed, at the November 12, 2024 motions hearing, Plaintiff's counsel acknowledged that since discovery closed in this case, Plaintiff was not sure what additional measures Broadmead was taking regarding gluten-free food preparation and prevention of cross-contamination but acknowledged that Broadmead had created a separate gluten-free kitchen space.

disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794. Under the FHA, it is unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling." 42 U.S.C. § 3604(f)(2). The "refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling," constitutes discrimination. 42 U.S.C. § 3604(f)(3)(B).

Plaintiff seeks summary judgment and claims she is entitled to damages under the Rehabilitation Act and the FHA because Broadmead denied her a "like experience" and failed to accommodate her alleged disability. In its papers, Broadmead argued that Plaintiff's federal claims are time-barred, and, at the hearing, Broadmead contended that Plaintiff has failed to adduce evidence to create a genuine issue of fact regarding a failure to accommodate her disability.

### a. Effect of the Statute of Limitations

Claims under the FHA have a two-year statute of limitations. *See* 42 U.S.C. § 3613(a)(1)(A) ("An aggrieved person may commence a civil action ... not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice...."). The Rehabilitation Act does not set forth a statute of limitations, so federal courts "borrow the state statute of limitations that applies to the most analogous state-law claim." *Ott v. Maryland Dep't of Pub. Safety and Corr. Servs.*, 909 F.3d 655, 658 (4th Cir. 2018) (citing *Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567-68 (4th Cir. 2017)). Because Maryland law does not provide a cause of action for disability discrimination in the provision of public services, the closest state-law analog to the Rehabilitation Act claim is Maryland's more general statute of limitations. *See*

*Semenova*, 845 F.3d at 567-68.[4] Under the Courts and Judicial Proceedings Article of the Maryland Code, a plaintiff must file a civil action "within three years from the date it accrues[.]" Md. Code, Cts. & Jud. Proc. § 5-101. Plaintiff filed this action on September 26, 2023. ECF 1. Therefore, a Rehabilitation Act cause of action accruing prior to September 26, 2020 would be time-barred, and a Fair Housing Act claim accruing prior to September 26, 2021 would be time-barred. *See Mary's House, Inc. v. North Carolina*, 976 F.Supp.2d 691, 699 (M.D.N.C. 2013) (accrual of civil rights actions, including those under the Rehabilitation Act and FHA).

While state law determines the applicable statute of limitations for ADA and Rehabilitation Act claims, federal law determines when those claims accrue. *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 348 (4th Cir. 2011). A civil rights cause of action "accrues when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Id*. However, if a plaintiff can show "the illegal act did not occur just once, but rather in a series of separate acts, and if the same alleged violation was committed at the time of each act, then the limitations period begins anew with each violation." *Id*. (citation, internal quotations, and alteration omitted). Continual unlawful acts must be distinguished from the continuing ill effects of an original violation; the latter will not toll limitations. *Id*. A continuing violation is one in which "the unconstitutional or illegal act

---

[4] This Court and the Fourth Circuit have applied Maryland's three-year general limitation period for civil cases to claims under the Rehabilitation Act and the ADA where the broad enforcement mechanisms afforded by these statutes contrast with limited causes of action recognized under Maryland Law. *Semenova*, 845 F.3d 567-68; *Jeandron v. Bd. of Regents*, 510 F. App'x 223, 226 (4th Cir. 2013) (unpublished table decision); *Ensminger v. Towson Univ.*, No. 1:22-cv-02998, 2024 WL 449296, at *5 (D. Md. Feb. 5, 2024); *Schalk v. Associated Anesthesiology Prac.*, 316 F. Supp. 2d 244, 251 (D. Md. 2004) (listing cases). Broadmead states that "the three-year statute of limitations that otherwise applies to ADA claims is irrelevant" here because "the Article III standing inquiry subsumes any otherwise applicable statute of limitations" on Plaintiff's ADA claim. ECF 39-1 at 14 n.2. While this is correct, the Court notes that even if Plaintiff's ADA claim were not barred for lack of standing, it would be time-barred for the same reasons that her Rehabilitation Act claim is time-barred.

was a fixed and continuing practice" with the same alleged violation committed at the time of each act. *Id*. (citation omitted).

Broadmead argues that Plaintiff's claim under the Rehabilitation Act is time-barred because it accrued "in January 2019" when Plaintiff "penned a letter to Broadmead detailing all the ways in which she believed she was being discriminated against," ECF 39-1 at 17-18; ECF 39-3 at 162-65, and that her FHA claim is time-barred because she decided to stop eating at Broadmead in January 2021, ECF 39-1 at 22. Plaintiff responds that her federal law claims "are timely under the continuing harm/violation doctrine." ECF 44 at 12. She admits that Broadmead has, "in some areas," committed "'multiple discrete acts of discrimination' in violation of federal law," which would not be tolled by the continuing violation doctrine. ECF 44 at 18 (citing *Hill v. Hampstead Lester Morton Court Partners, LP*, 581 F. App'x 178, 181 (4th Cir. 2014)). However, Plaintiff claims that "in other areas," Broadmead committed a single act, "namely, its refusal to engage with [Plaintiff's] complaints and its repeated lies to her about Broadmead's engagement with the gluten-free program," amounting to an ongoing pattern of discrimination. *Id*.

Even assuming all facts in her favor, Plaintiff cannot use the continuing violation doctrine to toll her federal claims.[5] Plaintiff has not connected the dots to demonstrate how the three discrete "glutenings" over three years, taken together with some menu items marked gluten-free in error,[6]

---

[5] All three of Plaintiff's federal claims are based on the same discrete allegations regarding Broadmead's failure to accommodate her disability. ECF 38 at 14-27.

[6] Broadmead agrees that the stuffed tomato Plaintiff consumed in June 2020 was mislabeled gluten-free on the menu and that it began "using color-coded menus to identify gluten-free items" in response to this incident. ECF 39-1 at 8. Broadmead also acknowledges that there were "a handful of transcription errors" on menus in which items were mislabeled as gluten-free when they were not. ECF 39-1 at 3, 13; *see also* ECF 39-3 at 156 (Plaintiff did not consume apple pie after a Broadmead employee informed her it was incorrectly labeled gluten-free).

undesired changes to Broadmead's gluten-related labeling, and her dissatisfaction with the quality and variety of Broadmead's gluten-free food, ECF 38 at 19-21, ECF 44 at 6-7, amount to a systemic practice or policy of recurring unlawful disability discrimination. *See Szedlock v. Tenet*, 61 F. App'x 88, 93 (4th Cir. 2003) (unless plaintiff alleges a hostile work environment, each instance of discrimination is a discrete act, and early discriminatory acts are not made timely simply because they resemble later discriminatory acts). Plaintiff's assertions amount to a hodgepodge of general and specific complaints about gluten-free dining at Broadmead. Simply grouping them together under the broad umbrella of "failure to accommodate" her disability does not transform them into a single continuing violation.

And importantly, many courts, including the Fourth Circuit, have rejected the application of the continuing violation doctrine to alleged failures to accommodate under the ADA or Rehabilitation Act. *See id.*; *Raiford v. Maryland Dept. of Juvenile Servs.*, No. DKC-12-3795, 2014 WL 4269076, at *7 (D. Md. Aug. 28, 2014) ("Courts that have analyzed the doctrine in connection with failure to accommodate claims have concluded that the doctrine does *not* apply." (emphasis in original)); *Keith-Foust v. North Carolina Central Univ.*, 2016 WL 4256592, at *6-*7 (M.D.N.C. Aug. 18, 2016); *Long v. Howard Univ.*, 512 F. Supp. 2d 1, 16 (D.D.C. 2007) (citing, by way of example, cases from the Ninth, Fourth, and Second Circuits and district courts in Kansas and New York for the proposition that failure to accommodate under the ADA or Rehabilitation Act is a

discrete act to which the continuing violation doctrine does not apply). Thus, the continuing violation doctrine cannot be applied to make Plaintiff's federal claims timely in their entireties.[7]

### b. Alleged Incidents of Discrimination

Turning to Plaintiff's individual allegations, the wrongs Plaintiff alleges as part of her federal claims generally fall into three distinct categories: 1) three incidents, over three years, involving gluten exposure from food prepared by Broadmead, 2) other distinct incidents involving menu errors or mislabeling/unclear labeling of food, and 3) claims related to the variety and quality of gluten-free food Broadmead offers. ECF 38 at 7-9, 16-24. Each category will be addressed in turn.

First, assuming Plaintiff consumed gluten at Broadmead in the three isolated incidents she cites, ECF 38 at 7-9, such discrete, accidental exposures may provide a basis for her tort claims, but Plaintiff has not shown how they substantiate that Broadmead denied her a "like experience" or failed to accommodate her disability under federal law. *See LeClair v. Mass. Bay Transp. Auth.*, 300 F. Supp. 3d 318, 325 (D. Mass. 2018)) (The "ADA is not a wholesale substitute for common-law personal-injury torts."); *White v. NCL America, Inc.*, No. 05-22030-CIV, 2006 WL 1042548,

---

[7] Plaintiff's reliance on *Carter v. Pa. Dep't of Corrs.*, No. 08-0279, 2008 WL 5250433 (E.D. Pa. Dec. 17, 2008), is misplaced. In that case, the court found a continuing violation based on a prisoner's allegations of denying and delaying treatment for an ongoing medical need under § 1983. *Id.* at *9-*10. The *Carter* court found that defendant's ongoing failures to treat a tumor in plaintiff's spine amounted to violations constituting the same type of recurring discrimination and had a "degree of permanence" that triggered plaintiff's awareness of his rights. *Id.* The continuing violation reasoning applicable to prisoners' civil rights litigation does not apply here, where each instance of discrimination that Plaintiff alleges is a discrete act without repeated conduct. *See Long*, 512 F. Supp. 2d at 17 (refusal to provide a requested accommodation can occur in a single action, is easy to identify and requires no further adverse action to support a claim, thus continuing violation doctrine not available). The incorrectly labeled stuffed tomato or apple pie is not the same as the allegedly gluten-containing chicken marsala, or the inability to provide a gluten-free roll upon request, or the use of a gluten-free food label versus a gluten-friendly label.

at *5 (S.D. Fla. Mar. 8, 2006) (ADA's expressly stated purpose is "elimination of discrimination against individuals with disabilities" and statute "was not designed to protect those with disabilities from personal injuries"); *Hunter on behalf of A.H. v. District of Columbia*, 64 F. Supp. 3d 158, 189 (D.D.C. 2014) (anti-discrimination statutes like FHA, ADA, and Rehabilitation Act are not designed to "promote public safety" or prevent physical harm but to combat discrimination); *see also Anderson v. Colo., Dept. of Corrs.*, 848 F. Supp. 2d 1291, 1300 (D. Colo. 2012) (The ADA and Rehabilitation Act do not create federal remedy for tort of medical malpractice). Also, as discussed below, two of the three alleged gluten-exposure incidents, the crabcake and the stuffed tomato, are time-barred, and Plaintiff has not adduced facts creating a genuine issue of material fact as to the third, the chicken marsala.

Second, with respect to the menu errors and incidents of mislabeling or insufficient labeling, even if these discrete acts are not time-barred, Plaintiff cannot establish Article III standing to bring these claims. To sustain this burden, the "irreducible constitutional minimum" Plaintiff must allege is: (1) she suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). At a minimum, Plaintiff is unable to satisfy the first element. "To establish an injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Particularization means that the injury affects the plaintiff in "a personal and individual way," and is necessary to establish an injury in fact but not sufficient. *Id*. An injury in fact must also be "concrete," meaning that "it must actually exist" and cannot be "abstract." *Id*. at 340. An injury is "imminent" if it is "certainly impending," *Clapper v. Amnesty Int'l USA*, 568 U.S. 398,

409 (2013) (citations omitted), but if the risk is too speculative, Article III standing is lacking, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021).

With respect to any alleged menu errors or mislabeling incidents occurring within the statute of limitations, Plaintiff has not shown that she suffered any concrete injury that is actual or imminent. She has not shown that she consumed gluten as a result of mislabeling or insufficient labeling. Instead, Plaintiff has demonstrated she can and has spotted the mistakes on Broadmead's menus and inquired about them without suffering a concrete or actual injury in fact. ECF 38 at 13 (on multiple occasions in 2024, Plaintiff was able to verify if an item contained gluten without consuming it); ECF 38-2 at 122-23 (same). While Plaintiff may find it "uncomfortable," "embarrassing," and "time-consuming" to ask questions about or order gluten-free food at Broadmead, ECF 38 at 24, she has not demonstrated that it is impossible to do so or that doing so denies her equal access to the dining facilities at Broadmead. *See PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682 (2001) (for the purposes of evaluating discrimination under federal law, an accommodation can be reasonable but not necessary where participation is "uncomfortable or difficult" but not beyond a disabled individual's capacity); *J.D. by Doherty v. Colonial Williamsburg Found.*, 925 F.3d 663, 671 (4th Cir. 2019) (where access may be "uncomfortable or difficult" but is not "beyond his capacity," disabled individual is not denied an opportunity equal to that of nondisabled counterparts).

Finally, as discussed in relation to her request for injunctive relief, beyond speculation and conjecture of potential harm, Plaintiff has not shown an "imminent and substantial" harm resulting from mislabeling or insufficient labeling, particularly since she stopped consuming any food at Broadmead as of January 2021. *See Arc of Iowa v. Reynolds*, 94 F.4th 707, 710-11 (8th Cir. 2024) (finding plaintiffs potential increased risk of severe illness should they contract COVID-19 due to

lack of universal masking insufficient to demonstrate future impending injury, since odds of contracting COVID-19 and suffering complications were speculative and timing, if ever, was uncertain); *TransUnion LLC v. Ramirez*, 549 U.S. 413, 437-38 (2021) (determining that "plaintiffs did not factually establish a sufficient risk of future harm to support Article III standing" because the risk that misleading credit information would be disseminated to third parties was too speculative). Even if Plaintiff decides to resume eating at Broadmead, she has not alleged a real and immediate threat of future injury because she has shown that she can inquire and verify whether food contains gluten, Broadmead has implemented new policies for gluten-free dining, ECF 39-3 at 193-214, and as Plaintiff admitted in her January 2019 correspondence, she can and has been able to have a "safe" diet while eating at Broadmead even if she finds it "very repetitive and boring" to do so, *Id*. at 163. *See also Silva v. Baptist Hosp. S. Fla.*, 838 F. App'x 376, 384-85 (11th Cir. 2020) (no standing under ADA and Rehabilitation Act where hearing-impaired patients failed to prove a real and immediate, as opposed to conjectural or hypothetical, threat of future injury at hospitals because it was unlikely, considering hospitals' revised policies, that patients would experience discrimination upon return to hospitals). Plaintiff's allegation of a potential risk of gluten consumption due to mislabeling or insufficient labeling is too speculative to satisfy the injury in fact element for standing.

Third, Plaintiff's claim regarding the variety and quality of gluten-free food served by Broadmead is also time-barred even though her complaints persist to date. The limitations period began to run when Plaintiff knew, or should have known with the exercise of reasonable diligence, that she was being subject to discrimination. *See A Soc'y Without A Name*, 655 F.3d at 348. In an email to Broadmead staff in January 2019, Plaintiff outlined the allegations underlying her federal discrimination claims, including that Broadmead failed to provide a sufficient variety of gluten-

free options (including entrees, breads, and desserts). ECF 39-3 at 162-65. Thus, the record demonstrates that Plaintiff was aware of Broadmead's alleged failures to accommodate her disability in that manner beginning in at least January 2019. *Id.* at 162 ("These are my observations, concerns, and suggestions regarding gluten free food at Broadmead"); *see also id.* at 161 ("I am forwarding an email I sent to Dan Hall 4 plus years ago regarding gluten free food options."); ECF 38-2 ("Enclosed please find a copy of a memo I shared with you in January of 2019 concerning my efforts to cope with Celiac Disease as a member of the Broadmead Community."); ECF 44 at 18 (acknowledging that Plaintiff "lodged complaints with [Broadmead's] CEO" on January 15, 2019). Because this action was filed on September 26, 2023, both the Rehabilitation Act and the FHA claims pertaining to the variety and quality of gluten-free food are beyond limitations. *Frederick Rd. Ltd. P'Ship v. Brown & Sturm*, 756 A.2d 963, 972 (Md. 2000) ("A grant of summary judgment is appropriate where the statute of limitations governing the action at issue has expired.").

For those reasons, Plaintiff's motion for partial summary judgment on her three federal claims is **DENIED**, and Broadmead's motion for summary judgment as to those claims is **GRANTED**. The Court will now address Broadmead's motion for summary judgment, ECF 39-1, on Plaintiff's contract, tort, and warranty claims.

### iii. Breach of Contract (Count IV)

Plaintiff alleges that Broadmead breached the R&C Agreement by providing Plaintiff with "food that contained gluten and was not safe to eat." ECF 1 at 22-23; ECF 38-1 at 67-167. The contract provision at issue provides that "Broadmead serves three nutritional and properly cooked meals a day from a choice of well-balanced menus." ECF 38-1 at 75. The parties agree that Broadmead had an ongoing contractual obligation to provide Plaintiff such meals, and that the

meals had to be gluten-free, although that language is not expressly contained within the R&C Agreement. ECF 44 at 25-26; ECF 47 at 6.

To prevail on a breach of contract claim in Maryland, the plaintiff "must prove that the defendant owed the plaintiff a contractual obligation and the defendant breached that obligation. *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). Actions for breach of contract are generally governed by Maryland's three-year statute of limitations for civil claims. *Kantsevoy v. LumenR LLC*, No. ELH-17-359, 2019 WL 1441982, at *13 (D. Md. Apr. 1, 2019). A cause of action for breach of contract "generally accrues when the contract is breached." *Id.* (citation omitted); *Chevron U.S.A. Inc. v. Apex Oil Co.*, 113 F. Supp. 3d 807, 819 (D. Md. 2015) (noting that in Maryland, "the statute of limitations for a breach of contract claim usually begins to accrue on the date of the alleged breach").

As a result of Broadmead's ongoing contractual obligation, accrual would occur continuously such that Plaintiff may assert breaches of this provision and resulting damages which occurred within three years of the filing of her lawsuit. *Singer Co., Link Simulation Sys. Div. v. Balt. Gas & Elec. Co.*, 558 A.2d 419, 425-26 (Md. Ct. Spec. App. 1989) ("where a contract provides for continuing performance over a period of time, each successive breach of that obligation begins the running of the statute of limitations anew").[8]

---

[8] Plaintiff contends that "the mishandling of gluten-free food with the crab cake, stuffed tomato, and chicken marsala are distinct actional breaches under the R&C Agreement, restarting the statute of limitations." ECF 44 at 25. Any damages resulting from breaches which occurred within the limitations period, *i.e.*, within three-years of the lawsuit, are not time-barred. *See Singer*, 558 A.2d 425-26. Thus, even if they could establish a breach of contract, which they cannot, the crab cake incident (accruing in February 2018) and stuffed tomato incident (accruing in June 2020) are time-barred.

Plaintiff has not alleged a genuine dispute of material of fact that Broadmead failed to provide Plaintiff with gluten-free food during the pertinent period. Instead, the record shows that Broadmead provides Plaintiff with gluten-free food options, but Plaintiff has chosen not to eat them. ECF 38-2 at 50-53 (examples of Broadmead's menus); ECF 39-3 at 182-92 (emails regarding Plaintiff's requests for gluten-free items and Broadmead's responses); ECF 44-1 at 26-27 (same); ECF 39-3 at 162 ("I have never tasted the soup at Broadmead because although many are cited as gluten free, I can't be sure they actually are as each one has several ingredients."); ECF 38-1 at 119 (Plaintiff stopped eating at Broadmead's dining facilities in January 2021); ECF 44-1 at 138-39 (same). Plaintiff may choose not to eat the food Broadmead provides, and she may be dissatisfied with the "safe" gluten-free options Broadmead offers,[9] but neither fact establishes a breach of Broadmead's obligations under the terms of the R&C Agreement. The R&C Agreement does not require Broadmead to provide the exact menu choices that Plaintiff (or any other Broadmead resident) desires.

As to the three incidents in which Plaintiff alleges she actually consumed gluten at Broadmead, she cannot survive summary judgment as to any. The stuffed tomato incident accrued in June 2020, ECF 39-3 at 113-16, ECF 1 at 9, and Plaintiff conceded at the motions hearing that it was time-barred. The crabcake incident occurred in February 2018, ECF 44 at 11, ECF 1 at 8, and the limitations period therefore expired in February 2021. Plaintiff argues that this claim is

---

[9] *See, e.g.*, ECF 44-1 at 134 ("Most days, desserts are sparse, and not one palatable dinner roll exists"), 138 ("[I] resumed eating bland options or salads for dinner when I went to the dining room"); ECF 38-2 at 121 (The "spa menu primarily consists of grilled burgers, salmon, and chicken. I have resorted to it rarely because the chicken and burgers are cooked over a raging fire which, according to National Institutes of Health, is dangerous due to the production of cancer-causing chemicals…Broadmead also offers a range of salads…which are a poor substitute for a hot meal at dinner time.").

timely under the discovery rule because, "while she consumed this crab cake in February 2018, she did not discover the crab cake had gluten-containing Rice Krispies until a conversation with the chef in 2021."[10] ECF 38 at 26. However, Plaintiff testified at deposition that after eating the crabcake and becoming ill in 2018, she thought "that crabcake was not gluten free" and emailed Broadmead to inquire whether it contained imitation crabmeat (which contains gluten). ECF 39-3 at 107-08, 151 (March 5, 2018 email from Plaintiff to Melinda Purkey). Broadmead's administrative service manager for food service responded, "they only use real crab meat in the crabcakes here." ECF 39-3 at 151 (March 5, 2018 email from Melinda Purkey to Plaintiff). But Plaintiff thought the crabcake inevitably had gluten in it and that she had been served the wrong one. ECF 39-3 at 107-08 ("I thought, Oh Dear God, that crab cake was not gluten free."), 127 ("One thing I know from decades of experience was that I had definitely consumed gluten. My stomach never lies."). She testified, "I thought, well, I know it had gluten in it." *Id*. at 108. The discovery rule protects plaintiffs "where it was not reasonably possible to have obtained notice of the nature and cause of an injury," but it tolls limitations only "until the time the plaintiff discovers, or through the exercise of diligence, should have discovered, the injury." *Frederick Rd. Ltd. P'ship v. Brown & Sturm*, 756 A.2d 963, 973-74 (Md. 2000). Plaintiff's deposition testimony regarding her thoughts and actions immediately following the incident, along with her March 2018 email, demonstrate that she was aware of a potential cause of her injury (gluten exposure) and began steps to investigate the cause in the days after eating the crabcake. ECF 39-3 at 107-08, 127. *See Georgia-Pacific Corp. v. Benjamin*, 904 A.2d 511, 533 (Md. Ct. App. 2006) (plaintiff's knowledge

---

[10] Broadmead avers that the crabcake Plaintiff ate in 2018 did not contain Rice Krispies. ECF 39-1 at 7, 25. Even assuming it did for the purposes of adjudicating this summary judgment motion, the crabcake incident remains time-barred.

of his exposure coupled with knowledge of his diagnosis was sufficient to put him on inquiry notice). Thus, despite her conversation with the chef over three years later, the limitations period began running as of March 2018, and the crabcake incident is time-barred.

That leaves the January 2021 chicken marsala incident. With respect to that claim, Plaintiff has not adduced sufficient non-speculative evidence to show that this amounted to a breach of Broadmead's obligation to provide her with gluten-free food. Instead, Plaintiff infers, without actual evidence, that the chicken marsala contained gluten, either due to the use of wheat flour instead of rice flour or through cross-contamination. ECF 44 at 20-22 (the chef who prepared the chicken marsala had previously questioned the necessity of Plaintiff's gluten-free diet, so there was "an inference of a lack of care in preparation;" the cleaning and sanitizing of the rice flour bin after Plaintiff fell ill "create[d] a reasonable inference that the bin may have been subject to cross-contamination;" there was "a reasonable risk for confusion between different flour types in preparation of meals"). Plaintiff also asserts that the chicken marsala contained gluten because she became ill after eating it, and her "stomach never lies," ECF 39-3 at 127, but she was admittedly not examined by a doctor following the incident, ECF 44-1 at 138, and the dish was not analyzed, *id*. at 166. Where Broadmead has offered the uncontroverted testimony of its employees, including the preparer of the dish, who attested that the chicken marsala was made with gluten-free rice flour on the date in question, ECF 39-3 at 145, 153-54, 157-58; ECF 44-1 at 22, Plaintiff simply has not offered evidence to create a reasonable likelihood that the chicken marsala contained gluten and thereby amounted to a breach of Broadmead's contractual obligation to provide her gluten-free food. *See Shin v. Shalala*, 166 F. Supp. 2d 373, 375 (D. Md. 2001) (a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences.").

Because Plaintiff has not shown a genuine issue of material fact regarding any breach of the R&C Agreement's terms, summary judgment is granted for Broadmead on her contract claim. *Neal v. East Carolina Univ.*, 53 F.4th 2022 (4th Cir. 2022) (citation omitted) ("Where there a failure of proof concerning an essential element of a plaintiff's case, summary judgment is appropriate regardless of the evidence proving other elements of the claim." (citation omitted)).

**B. Negligence (Count V)**

Broadmead seeks summary judgment on Plaintiff's negligence claim. Plaintiff's negligence claim is also based on her allegations of illness after three incidents of gluten exposure at Broadmead: the February 2018 crabcake incident, the June 2020 stuffed tomato incident, and the January 2021 chicken marsala incident. ECF 1 at 8-9, 23; ECF 39-1 at 25. Broadmead contends the crabcake and stuffed tomato incidents are barred by limitations, and Plaintiff cannot prove all necessary elements of her case regarding the chicken marsala incident. ECF 39-1 at 25-26.

As addressed above, the crabcake incident and the stuffed tomato incident are time-barred.

To survive summary judgment as to her negligence claim regarding the chicken marsala incident, Plaintiff must be able to establish a genuine issue of material fact regarding the elements of her claim: 1) Broadmead owned Plaintiff a duty of reasonable care; 2) Broadmead breached that duty; 3) Plaintiff suffered damages as a result of Broadmead's breach; and 4) Broadmead's breach was an actual and proximate cause of Plaintiff's injury. *Rosenblatt v. Exxon Co., USA*, 642 A.2d 180, 188 (Md. Ct. App. 1994). Although the question of whether a plaintiff has established the requisite elements of negligence is generally a matter for the jury, summary judgment is appropriate if there are no genuine issues of material fact and there is no evidence supporting one of the elements of negligence. *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 352 (D. Md. 2011).

Even assuming that she can prove the other elements of her negligence claim as to the chicken marsala incident, Plaintiff has failed to show that Broadmead breached a duty of care or that such a breach caused her injury. Here, although there may be some dispute as to whether the chicken marsala contained gluten and thus caused Plaintiff's sickness, the dispute is not genuine because Plaintiff has not presented sufficient evidence from which "a reasonable jury could return a verdict" in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

As discussed above, Plaintiff's claim that Broadmead breached a duty rests on conclusory allegations and unsupported inferences that the chicken marsala contained gluten, speculating that it could be either due to the use of wheat flour instead of rice flour or cross-contamination from utensils or surfaces. ECF 44 at 21. For example, Plaintiff infers that the chef who prepared the chicken marsala had a "lack of care in preparation" because he "previously questioned [Plaintiff's] gluten-free diet." *Id.*; *see also* ECF 44-1 at 150 ("he started to spout about my gluten-free diet and how necessary was it…and I was embarrassed"). But Plaintiff's inferences and subjective feelings about the chef, without any affirmative evidence, are not sufficient to raise a genuine issue of material fact as to whether Broadmead breached a duty or whether the alleged breach caused her sickness. *See Anderson*, 477 U.S. at 248 (the nonmoving party may not rely upon mere allegations or denials of allegations in pleadings to defeat a motion for summary judgment).

Plaintiff also relies on circumstantial evidence for her assertion that the chicken marsala contained gluten. She "became violently ill within two to three hours" of consuming the dish and suffered from "[n]ausea, prolonged vomiting, diarrhea, the dreaded chills, a severe headache." ECF 39-3 at 128. Because the chicken marsala was "the only meal [she] ate that evening" and she "had no other food in [her] stomach," Plaintiff argues that "[t]here is no other possible explanation for the attack." ECF 44-1 at 138; 21 ("There is no way that chicken was gluten free because I

NEVER vomit unless I consume gluten."). In support of her own assertions, Plaintiff offers selective deposition testimony of her expert, Dr. Alessio Fasano, who "would conclude that the chicken marsala contained gluten." ECF 44 at 20 (citing ECF 44-1 at 158-66).[11]

The use of circumstantial evidence is permissible to prove negligence under Maryland law only where the circumstantial evidence "amounts to a reasonable likelihood or probability rather than a possibility." *Dow v. L & R Props., Inc.*, 796 A.2d 139, 143-44 (Md. Ct. Spec. App. 2002). While Plaintiff can rely on her personal knowledge regarding her symptoms, she has raised only a possibility but offers no evidence to create a reasonable likelihood or probability that the chicken marsala contained gluten and thus made her sick. *Lyons v. Campbell*, 707 A.2d 850, 863 (Md. 1998) ("causation evidence that is wholly speculative is not sufficient"). The testimony of Plaintiff's expert, Dr. Fasano, is not based on examination of the chicken marsala dish at issue or even of Plaintiff following her consumption of the chicken marsala but instead on documents provided by Plaintiff, an overall assessment of Plaintiff's recorded symptoms in the three incidents in which Plaintiff became ill, and, allegedly, "an admission that something was made incorrectly," ECF 44-1 at 159. *See also* ECF 44-1 at 138 (Plaintiff: "I may not have had a doctor in my home when it happened, but Dr. Fasano would recognize the symptoms as typical for a celiac patient"), 158-66 (Fasano: "from what I read, and again I didn't analyze the food,…there were documented

---

[11] Notably, Dr. Fasano testified that "gastrointestinal effects" from consuming gluten in celiac patients can occur even "one to two days after" consumption, and that symptoms of gluten consumption are not limited to "stomach upset" but are instead variable and "unpredictable" and can include "joint pain or brain fog or extreme fatigue." ECF 44-1 at 160-61. He did not, therefore, link Plaintiff's symptoms and the chicken marsala she consumed hours prior, discount the possibility that if her symptoms were related to gluten consumption, they could have come from some other item she ate within two days of onset, or discount the possibility that Plaintiff's symptoms were completely unrelated to gluten consumption.

instances in which the food was not prepared…properly").[12] However, Broadmead did not admit the chicken marsala was "made incorrectly;" instead, Broadmead offered the testimony of several employees, including the preparer of the dish, who stated that the dish was made with gluten-free rice flour. ECF 39-3 at 145, 153, 157-58; ECF 44-1 at 22. While Plaintiff speculates it was not, she offers no non-speculative evidence to support her version of events. The mere argued existence of a factual dispute, in the absence of evidence, will not defeat an otherwise properly supported motion. *Anderson*, 477 U.S. at 248-49.

Likewise, even when viewing the record in her favor, Plaintiff does not offer probative evidence to show that the chicken marsala was cross-contaminated with gluten. Plaintiff asserts that Broadmead's cleaning and sanitizing of the rice flour bin after Plaintiff became ill created "a reasonable inference that the bin may have been subject to cross-contamination." ECF 44 at 21. Broadmead's employees stated that the rice flour bin was changed and moved "so there isn't a possibility of any cross contamination." ECF 44-1 at 25, 91; *see also* 39-3 at 154.[13] While Plaintiff

---

[12] The question of whether gluten consumption caused an adverse reaction in someone with celiac disease is within a lay jury's understanding. *See Armstrong v. Target Stores Inc.*, No. CV-19-01941, 2020 WL 6149842, at *3 (D. Ariz. Oct. 19, 2020). However, Plaintiff has not provided actual evidence of her consumption of gluten or evidence showing that the chicken marsala was the cause of her symptoms. Plaintiff's evidence consists only of her own speculative testimony and her expert's testimony, neither of which are sufficient to establish breach and causation. *See Anderson*, 477 U.S. at 248 (nonmoving party may not rely on mere allegations or denials of allegations in the pleadings to defeat a motion for summary judgment, rather it must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."); *Anderson v. Real Mex Rests.*, No. DKC 08-2436, 2010 WL 457522, at *4 (D. Md. Feb. 3, 2010) (plaintiff's expert, an allergist, could not opine that Plaintiff consumed dairy as a result of defendant's negligence where there was no evidence as to where dairy that caused plaintiff's allergic reaction came from).

[13] Under Rule 407 of the Federal Rules of Evidence, evidence of subsequent precautionary measures is inadmissible to prove negligence or culpable conduct. *Werner v. Upjohn Co., Inc.*, 628 F.2d 848, 856 (4th Cir. 1980).

raises a *possibility* that the placement and labeling of the bins used for rice flour and wheat flour, ECF 44 at 21-22, created a *potential* for a mistake or cross-contamination, a possibility or potential without more is not enough to defeat summary judgment. *Anderson*, 477 U.S. at 249-50 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."); *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003) ("A mere scintilla of proof, however, will not suffice to prevent summary judgment.").

Ultimately, Plaintiff has not presented sufficient evidence to allow a rational trier of fact to find in her favor on her negligence claim. As such, there is no genuine issue for trial, and Broadmead is entitled to summary judgment. *Ricco v. DeStefano*, 557 U.S. 557, 586 (2009) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." (citation omitted)).

### C.  Negligent Misrepresentation (Count VI)

Broadmead also seeks summary judgment on Plaintiff's negligent misrepresentation claim. In Maryland, negligent misrepresentation requires the plaintiff to prove that "(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which if erroneous will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; (5) the plaintiff suffers damages proximately caused by the defendant's negligence." *UBS Fin. Servs., Inc. v. Thompson*, 94 A.3d 176, 191 (Md. Ct. Spec. App. 2014) (citation omitted).

Negligent misrepresentation focuses on "affirmative statements made by the defendant that were intended to, and indeed, had the effect of inducing the plaintiff to carry out some action in reliance on the false statements." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, n.10 (Md. Ct. App.

2007). Plaintiff's complaint fails to enumerate the specific false statements made by Broadmead on which she relied to her detriment to support her negligent misrepresentation claim. ECF 1 at 24. In her opposition to Broadmead's summary judgment motion, Plaintiff tries to remedy this omission by citing to the following allegedly "false statements:" Broadmead's answer in this case, ECF 38-1 at 6-7, 36, admitting that Broadmead assured Plaintiff before she executed her contract that "it would provide her with safe, gluten-free food to eat in its food venues;" an excerpt from a document she allegedly received when executing the R&C Agreement regarding "emphasis" on "Special Diets" including "Gluten Free" and "Celiac," ECF 38-2 at 4; and her own testimony describing what she was told in 2018 about the crabcake being gluten-free, ECF 44-1 at 152. ECF 44 at 28.[14]

Under Maryland law, "[a] false statement is one that is false as to a present or past event and is of a material fact," and "[a] statement about a future event that proves to be false cannot support a claim for negligent misrepresentation." *Poole v. Mazda Motor of Am., Inc.*, No. TDC-20-0466, 2023 WL 2744410, at *5 (D. Md. March 31, 2023) (citing *Abercrombie v. Nationwide Mut. Ins. Co.*, 999 F. Supp. 660, 663 (D. Md. 1998)). Here, Plaintiff concedes that the Broadmead's statements made before Plaintiff signed the R&C Agreement were based upon Broadmead's "future conduct" but argues that under *Weisman v. Connors*, 540 A.2d 783, 791-92 (Md. Ct. App.

---

[14] With respect to the alleged "false statements" Plaintiff references in her opposition, ECF 44 at 28, they would be time-barred to the extent that they were made beyond the three-year statute of limitations. *See Kantsevoy v. LumenR LLC*, No. ELH-17-359, 2019 WL 1441982, at *13, *16 (D. Md. Apr. 1, 2019). This would include the statements Plaintiff alleges were made to her in 2018 regarding the crabcake, ECF 44 at 28, ECF 44-1 at 151, and any statements Broadmead made in 2016 before she signed the R&C Agreement. ECF 44 at 28; *see also* ECF 39-3 at 162-165 (January 15, 2019 letter from Plaintiff to Broadmead in which Plaintiff states, "[A]t the time of my initial visit to Broadmead, I was assured that my need for a gluten free diet would not present a problem. I was told that others had the same need to be gluten free and that the staff was familiar with the requirements of the diet.").

1988), a statement about a future event can support a claim of negligent misrepresentation if it relates to matters within the speaker's control, rather than a prediction or expectation. ECF 44 at 27-28. While this may be true, Plaintiff has not provided any evidence that the statements she references were false or that, at the time Broadmead made the statements, Broadmead did not intend to carry them out. *See id.*; *see also Heritage Oldsmobile-Imports v. Volkswagen of Am., Inc.*, 264 F. Supp. 2d 282, 291 (D. Md. 2003) (for negligent misrepresentation claim based on future conduct to be actionable, party making representation must know it to be false when made, in which case claim becomes one for fraudulent misrepresentation).

Thus, on the record presented, Plaintiff has not alleged a timely false statement made by Broadmead to support her negligent misrepresentation claim. Where the evidence does not support a finding that Plaintiff satisfied a required element of the negligent misrepresentation claim, the Court need not address the remaining elements and will grant summary judgment to Broadmead on this claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) ("[A] complete failure of proof concerning an essential element ... necessarily renders all other facts immaterial."); *Casey v. Geek Squad*, 823 F. Supp. 2d 334, 352 (D. Md. 2011) (no genuine issue of material fact where non-moving party fails to produce evidence on essential element of the case).

### D. Breach of Express Warranty (Count VII), Implied Warranty of Merchantability (Count VIII), Implied Warranty of Fitness for a Particular Purpose (Count IX)

Finally, Broadmead seeks summary judgment as to Plaintiff's warranty claims. Broadmead argues that an action for breach of express warranty is inappropriate here because the R&C Agreement is a contract for services, not goods. ECF 39-1 at 28. Broadmead also asserts that even if Plaintiff could bring a cause of action for breach of warranty, she has failed to establish that a warranty existed. *Id*. at 28-29. In response, Plaintiff argues that Broadmead's "brochure" created a warranty for dining services but also for a good: gluten-free food. ECF 44 at 30.

Warranty claims are brought under the Uniform Commercial Code (U.C.C.) and specifically under U.C.C. Article 2, which applies only to "transactions in goods." *Rassa v. Rollins Protective Servs. Co.*, 30 F. Supp. 2d 538, 542-43 (D. Md. 1998). Where the contract at the heart of a dispute involves both consumer goods and services, Maryland courts look for the contract's "predominant purpose." *Id*. (finding that predominant purpose of hybrid contract was for installation, programming, and monitoring of alarm system and sale of alarm parts was incident to services provided). An express warranty claim is not available where the sale of services constitutes the predominant purpose of the contract at issue. *Id*.

The primary question at issue here is whether the U.C.C. applies to the R&C Agreement. The main thrust of the R&C Agreement involves services, specifically residential services and other incidental services including dining and medical care. ECF 39-3 at 8 ("Broadmead will furnish to the Resident facilities, services and medical care as provided in this Agreement"); *see Lohman v. Wagner*, 862 A.2d 1042, 1047 (Md. Ct. Spec. App. 2004) (looking at terminology used in parties' agreement "to determine whether it is peculiar to sales or service contracts" (citation omitted)). Although the R&C Agreement calls for Broadmead to provide certain goods, such as three meals per day and furniture, ECF 39-3 at 58, the main thrust of the contract is the provision of services with goods incidentally involved. *See* ECF 39-3 at 5 (table of contents lists various services provided under R&C Agreement). Plaintiff does not disagree, finding it "is correct that the R&C Agreement is a contract for services in which goods, like food, are incidentally involved;" however, she simply goes on to state that an express warranty was created because Broadmead's "brochure states it was able to serve gluten-free food for celiac disease." ECF 44 at 28 (citation omitted). The U.C.C. does not apply to a contract where the primary purpose is the rendering of services rather than the provision of goods. *Princess Cruises, Inc. v. Gen. Elec. Co.*, 143 F.3d 828,

832-33 (4th Cir. 1998). Because the U.C.C. does not apply to the R&C Agreement, Plaintiff does not have a claim for express warranty. *Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 358-59 (D. Md. 2011).

As to Plaintiff's implied warranty claims, *Rassa*, 30 F. Supp. 2d at 542, Maryland courts have held that "one serving food to be immediately consumed on the premises is neither an insurer of the fitness or wholesomeness of the food served nor liable upon implied warranty." *Childs Dining Hall Co v. Swingler*, 173 Md. 490, 503 (1938). Thus, Maryland law does not support implied warranty claims against food-service establishments. Accordingly, Plaintiff is unable to establish a prima facie case for breach of any warranty, express or implied, under Maryland law, and summary judgment is granted to Broadmead as to Plaintiff's warranty claims, ECF 1 at Counts VII, VIII, and IX.

### E.  Plaintiff's Motion to Enforce Payment of Expert Fees

Finally, Plaintiff has filed a motion seeking to enforce Broadmead's payment of expert fees to her expert, Dr. Fasano, for his time spent preparing for deposition and being deposed. ECF 48. Plaintiff designated Dr. Fasano as an expert on March 4, 2024. ECF 52 at 11. Broadmead's expert deposition of Dr. Fasano was originally scheduled for April 22, 2024 but was rescheduled to May 13, 2024. ECF 48 at 2. In Invoice No. 061024 dated June 10, 2024, Dr. Fasano billed $4,725 for 6.45 hours of work at $700 per hour. ECF 48-2. Invoice No. 061024 listed two hours spent on April 21, 2024 preparing for the originally scheduled deposition, two hours spent on May 12, 2024 preparing for the rescheduled deposition, and 2.45 hours of actual deposition time on May 13, 2024. *Id*. While there was some discrepancy with Dr. Fasano's address, Broadmead issued and sent a check to Dr. Fasano to pay Invoice No. 061024. ECF 52 at 2. Counsel for the parties then exchanged emails regarding an "Updated Invoice: 061724" issued by Dr. Fasano "for time spent

in review of deposition transcripts and additional documentation in the *McGinn v. Broadmead, Inc.*, case," ECF 48-3. ECF 52-1, 52-2, 52-3, 52-4. Updated Invoice No. 061724 bills $7,000 for ten additional hours worked at $700 per hour and lists documents Dr. Fasano "reviewed between February and May, 2024." ECF 48-3.

Broadmead objects to paying Updated Invoice No. 061724, alleging that this invoice does not indicate whether the ten hours listed overlap with the four hours in Invoice No. 061024, which Broadmead paid. ECF 52. Moreover, Broadmead argues that even assuming there is no overlap between the ten hours in Updated Invoice No. 061724 and the four hours in Invoice No. 061024, fourteen hours "worth of preparation for a deposition that lasted less than three hours" is "unreasonable." *Id*. at 6. Plaintiff argues that Dr. Fasano's expertise warrants the fees sought, and that his fees in Updated Invoice No. 061724 were reasonably incurred in preparing for his deposition. ECF 48 at 5-6.

Federal Rule of Civil Procedure 26 requires courts to order the party seeking an expert witness's deposition to "pay the expert a reasonable fee for time spent in responding" to the deposition request, "unless manifest injustice would result." Fed. R. Civ. P. 26(b)(4)(E). The goal of Rule 26(b)(4)(E) is "to calibrate the fee so that one party will not be hampered in efforts to hire quality experts, while the opposing party will not be burdened by unfairly high fees preventing feasible discovery and resulting in windfalls to the expert." *Anthony v. Abbott Labs.*, 106 F.R.D. 461, 465 (D.R.I. 1985); *see also Fleming v. United States*, 205 F.R.D. 188, 189 (W.D. Va. 2000). The party seeking reimbursement bears the burden of demonstrating that the expert's requested fees and expenses are reasonable. *Mathi v. Fed. Reserve Bank of Richmond*, No. SAG–16–3182, 2018 WL 495948, at *1 (D. Md. Jan. 22, 2018). Ultimately, the court has discretion to determine what expert fees are reasonable. *Fleming*, 205 F.R.D. at 189.

As a preliminary matter, the Court notes that Plaintiff did not make a good faith effort to resolve the present discovery dispute without judicial intervention as required under Discovery Guideline 3 of the Local Rules and Local Rule 104.7. Loc. R. 104.7 (D. Md. 2023); Guideline 3.a of the Discovery Guidelines for the United States District Court for the District of Maryland, Loc. R. App. A (D. Md. 2023); *see* ECF 52-1, 52-2, 52-3, 52-4 (e-mail exchanges between Plaintiff's counsel and counsel for Broadmead regarding payment of Dr. Fasano's invoices). Plaintiff also failed to file the requisite certificate attesting to a good faith effort having been made to resolve the dispute, as required by Local Rule 104.7(a). *See* Loc. R. 104.7(a) ("Counsel shall confer with one another concerning a discovery dispute and make sincere attempts to resolve the differences between them. The Court will not consider any discovery motion unless the moving party has filed a certificate reciting (a) the date, time and place of the discovery conference and the names of all persons participating therein, or (b) counsel's attempts to hold such a conference without success; and (c) an itemization of the issues requiring resolution by the Court. *A 'reasonable effort' means more than sending an email or letter to the opposing party*. It requires that the parties meet in person or by video or telephonic means for a reasonable period of time in a good faith effort to resolve the disputed matter." (emphasis added)). Despite Plaintiff's failure to file a Local Rule 104.7 certificate, the Court will nevertheless address the pending motion so that this litigation may fully conclude. *See Madison v. Harford Cnty., Md.*, 268 F.R.D. 563, 564-65 (D. Md. 2010); *Schad v. Fager's Island, Ltd.*, No. SAG-14-527, 2016 WL 852709, at *1 (D. Md. Mar. 4, 2016).

The dispute here is not regarding the extent of Dr. Fasano's expertise or the reasonableness of his $700 hourly fee, but rather regarding the ten hours of preparation Dr. Fasano billed in Updated Invoice No. 061724, especially given that Dr. Fasano had already billed and been paid for four hours of deposition preparation time in Invoice No. 061024. *See* ECF 52 at 9-12, n.4. Dr.

Fasano's deposition was originally scheduled for April 22, 2024 and was later rescheduled for May 13, 2024. ECF 48 at 2. Invoice No. 061024 lists two hours on April 21, 2024 "spent in preparation and review for planned deposition on April 22, 2024" and two hours of preparation on May 12, 2024 for the rescheduled deposition the following day. ECF 48-2. Updated Invoice No. 061724 lists 25 categories of documents Dr. Fasano reviewed "[i]n preparation for deposition…between February and May, 2024." ECF 48-3.[15] Dr. Fasano was designated as an expert on March 4, 2024. ECF 52 at 11. Thus, it is unclear 1) whether the ten hours (beginning in February 2024) listed in Updated Invoice No. 061724 involved preparation of Dr. Fasano's expert report disclosed on March 4,[16] and 2) whether there was any overlap between the four hours of deposition preparation in Invoice No. 061024 and the ten hours in Updated Invoice No. 061724. "A party moving for fees or expenses should substantiate those requests, segregating properly compensable time from non-compensable time. The court is not going to root through the statements of various experts as if on a search for truffles with which to award the parties." *Rogers v. Penland*, 232 F.R.D. 581, 582 (E.D. Tex. 2005). Plaintiff has not substantiated her request for Broadmead to pay for ten additional hours of Dr. Fasano's time in Updated Invoice No. 061724.

---

[15] Several of the categories listed on Updated Invoice No. 061724 are nondescript, and thus the type or quantity of documents included in these categories is unclear. ECF 48-3 at 2 ("1. 2023 11-20 Mcginn V Broadmead Pi"; "2. 2023-11-20 Mcginn V Broadmead Pi[28]"; "22. 2024.02.21-Document Production"; "23. 2024.03.14-Document Production"; "25. McGinn plaintiff").

[16] In his May 13, 2024 deposition, Dr. Fasano testified that he requested and reviewed documents, including the three deposition transcripts listed on Updated Invoice No. 061724, to familiarize himself with Plaintiff's claims before agreeing to work on this case. ECF 48-4 at 20-22. Thus, it is also unclear whether the ten hours billed in Updated Invoice No. 061724 encompasses time spent reviewing documents before Dr. Fasano even agreed to participate in this case.

*See id.*; *Feliciano v. Cnty. of Suffolk,* 246 F.R.D. 134, 137 (E.D.N.Y. 2007) (lack of information as to reasonableness of expert fee by retaining party "militates in favor of a reduced fee award").

Moreover, while federal courts disagree as to whether an expert's deposition preparation time is properly reimbursable under Rule 26(b)(4)(E) as "time spent in responding in discovery," this Court finds that reasonable time spent by an expert in preparation for deposition by opposing counsel is permitted under the Rule. *Ndubizu v. Drexel Univ., et al.*, No. 07-3068, 2011 WL 6046816, at *2 (E.D. Pa. Nov. 16, 2011); *see also Rogers*, 232 F.R.D. at 582; *Fleming*, 205 F.R.D. at 190; 8A Fed. Prac. & Proc. Civ. § 2034 (3d ed. June 2024 Update). What constitutes a reasonable amount of preparation time can vary based on the complexity of the case, the level of detail in the expert's report, the lapse in time between the report and the expert's deposition, and the length of the expert's deposition. *See Fleming*, 205 F.R.D. at 190; *Ndubizu*, 2011 WL 6046816, at *2. Here, Dr. Fasano's deposition took place approximately two months after his expert report was disclosed,[17] the deposition lasted 2.45 hours, and this case does not involve complex and technical issues. *See* ECF 52 at 11-12; ECF 48-2. Thus, the four hours of deposition preparation time for which Dr. Fasano was compensated under Invoice No. 061024 is reasonable, but the ten additional hours billed in Updated Invoice No. 061724 are not. *See Underhill Inv. Corp. v. Fixed Income Disc. Advisory Co.*, 540 F. Supp. 2d 528, 539 (D. Del. 2008) (nineteen hours was "excessive" preparation for a four-hour deposition and a nine-page report issued three weeks prior); *Mannarino v. United States*, 218 F.R.D. 372, 376 (E.D.N.Y. 2003) (where expert's report was prepared a few months prior to deposition lasting just over one hour, eight hours of expert preparation was reduced to four hours of compensable time); *Fiber Optic Designs, Inc. v. New England Pottery, LLC*, 262

---

[17] The Court has not reviewed Dr. Fasano's report because it has not been submitted with any filing in this case.

F.R.D. 586 (D. Colo. 2009) (where deposition took place within a month of expert report's release and expert invoice failed to identify nature and extent of materials reviewed in preparation for deposition, four hours rather than requested sixteen hours of preparation time was appropriate); *cf.* *Boos v. Prison Health Servs.*, 212 F.R.D. 578, 580 (D. Kan. 2002) (3.5 hours was reasonable amount of time for expert to prepare for a 1.5 hour deposition taken more than a year after preparation of his report but hourly rate for preparation was reduced from $500 per hour to $200 per hour). Plaintiff's motion, ECF 48, is denied.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment, ECF 38, is **DENIED**. Broadmead's Motion for Summary Judgment, ECF 39, is **GRANTED**. Plaintiff's Motion to Enforce Payment of Expert Fees, ECF 48, is **DENIED**. Judgment will be entered in favor of Broadmead against Plaintiff.

A separate Order follows.


Dated: December 16, 2024                                    _____/s/_____

                                                            Stephanie A. Gallagher
                                                            United States District Judge